Our next case is Rubin v. Scotts Company LLC Mr. Poulsomas, am I pronouncing your name correctly? Yes, Your Honor. Okay, thank you. Thank you. We're ready whenever you are. Okay, thank you, Your Honor. Ms. Swise, is that correct also? Swise? No, Sweezy, Your Honor. Sweezy, okay. Thank you. Thank you very much. May it please the Court, Your Honor, my name is John Postumus. I represent the appellant, Patty Rubin, in this particular matter. We're here before you today, Your Honor, with regard to a district court action out of the It was a granting of Appalese... That's pronounced Nevada, Counsel. Nevada. Thank you. Glad to hear it. Appalese-Scotts' motion for summary judgment was granted by the Court. There are three issues that Ms. Rubin has raised on her appeal. The first... I'll address the first one that we addressed in order in our briefs as part of my argument here, and that is with regard to the claim construction related to the term volume-to-volume ratio. That claim or the term volume-to-volume ratio appears in the two independent claims that were at issue, Claim 1 and Claim 15. The judges... The district court's claim construction order interpreted volume-volume ratio to mean the change in volume per weight of material, parent volume divided by weight in parent before compression, as compared to the volume per weight of material after compression. There's really two issues that I would like to raise with the Court with regard to that The Court's construing of the term volume, as it's used in the claim language, to mean volume per weight of material or volume divided by weight. And then the second will relate to what has been referred to as the event compression versus expansion and whether or not that... How does Ms. Rubin's construction of volume-to-volume affect whether or not there's a genuine issue of material fact and dispute? Your Honor, the claim construction... The Court's summary judgment order was based off of an improper claim construction based on looking at the densities of the products that were related. Putting aside that, whether or not the claim construction is correct, how does the result of the Court's claim construction... that it raises a genuine issue of material fact? Well, Your Honor, it changes the case considerably based on how the infringement is determined on summary judgment. If the construction that's applied, that's proposed by Ms. Rubin, is applied by the Court, you're looking at it at the event of looking at the compressed material, expanding it, and then determining the relative volumes of what was the expanded material versus what is the compressed material. At summary judgment, the Court applying their claim construction, and Scott's presented evidence of looking at the uncompressed or the bulk density of material versus compressed and looked at the relative volumes in that context. It's really a fundamental, I think, approach to the case here in terms of looking at what constitutes infringement under Claims 1 and Claims 15. This is the critical issue under both claims, and that is that what the Court did is it substituted the words... If you look at the claim language in Claim 1 and Claim 15, you look at volume, what it did is it substituted the words volume per weight of material. If Ms. Rubin's construction is adopted, are you saying that it brings the ratio down below 13.51? It will, Your Honor, because it will be a fundamental change in terms of how it's looked at. Does it bring it down below the 10 level? Our position is, and there was during the discovery period, there was evidence presented with regard to looking at the compressed material of Scott's. There was water added to it to identify the amount of expansion that occurred, and then that there was a determination that it would be... In other words, it didn't expand to 13 times its original size, if that's Your Honor's question. It expanded to much less than that, and our position is that it expanded into the ratio. But did it expand it down to the about 10.1 range? It would have been below that. It would have been nearer to 7 to 1. Where is that on the record? That's not on the record, Your Honor, because the summary judgment was granted based on an improper claim construction. So we're asking the court today to present a proper claim construction in reverse and remand. If you put that on the record in your claim construction argument, then perhaps there would be a genuine issue, a fact that's in dispute, but it's not in there. Right. It's definitely not in there, Your Honor, but the claim construction occurred early on in the case before the discovery occurred in this case, and discovery was based off of what the judge's claim construction... The whole case, though, deals with the range, right? It does. And if you have evidence that the product under this claim construction falls within the infringed range, then why wouldn't you present that evidence? Well, Your Honor, it was based off of how the court construed volume-to-volume ratio. Well, your discovery was, you say, but you can still introduce an affidavit of evidence, yes? We could have, Your Honor. I mean, it certainly could have done that. It would not have made any... In view of the district court's claim construction, it would not have made any sense because it would have been an improper analysis. I mean, what we were trying to accomplish is to avoid summary judgment and go to trial, but in terms of opposing the summary judgment. But the summary judgment was based off an improper claim construction because at the weight of material, or the inverse of that is referred to as density, does not appear anywhere in the specification. It doesn't appear anywhere in the prosecution history. That is a change of the words that the district court undertook in this particular case. So when you're arguing claim construction and what does volume-to-volume, how should that be construed, at that point, wouldn't it have been advantageous to your client to argue that if you adopt my claim construction, it's going to drop the volume down within the range, the infringement range? Your Honor, it would have been, but at the time of the claim construction, the information with regard to what the ranges were with regard to the accused product were not available. So, in other words, the Scotts' position with regard to 13.5 to 1 was not available and, in fact, was not, it was well after claim construction where that information became available. In claim 1, the word compressed modifies volume-to-volume, doesn't it? It does, Your Honor. It modifies, technically, it modifies the dehydrated growing medium. So, it's compressing a dehydrated growing medium at a volume-to-volume ratio. And so, but the construction proposed by Rubin is entirely consistent with the use of the words that are shown here with regard to the context that's presented. Compressing a dehydrated growing medium at a volume-to-volume ratio, the idea here is that these are all, you know, this material, this bulk material is compressed, and then when you add water, it expands. And so, the fact that the step includes compressing a dehydrated growing medium really doesn't necessitate that the transitional event for volume-to-volume ratio has to be compression. It can be expansion. Your view is that introducing the water is necessary as a matter of claim construction? It's not necessary as a matter of claim construction, Your Honor. It's, well, I should say it's not required to infringe the claim, but it is with regard to determining whether the claim has been infringed. Let me rephrase that. How are you going to know? That's my question. Sorry. So, if the test, if what the claim says is that the product requires this comparison to be made after water is added? Yes. Then, when Scott's manufacturing the stuff at his plant, it hasn't introduced the water because that's what the consumer is going to do. Right? Yes, that's right, because the material is going that way. The consumer may introduce a little water, a lot of water, I don't know how much, I don't know whether always when you do water, you get the result, but you've got a circumstance where your claim isn't going to cover the product as manufactured. But it does cover the product. It does cover the, you have a method and you have an apparatus claim here. You have, in order to determine whether the infringement has occurred, right, whether it's been manufactured in a way that infringes the claim, it includes expanding the material using water. It seems to me pretty clear where the language that we just discussed goes on to say, that the growing medium is compressed at a volume-to-volume ratio from an initial ratio of less than 3.1 to a ratio from 7.1 to about 10.1, that those numbers are modifying the initial ratio, are they not? Yes. So you have the initials compressed from an initial ratio to a range ratio of 7.1 to about 10.1, that's correct, Your Honor. And that number is then modified by water somewhere? No, Your Honor. So there's really, let me step back here. In terms of the volume aspect, right, if you were to take the judges, the district court's judges have done that, all right? They have basically interpreted volume-to-volume to mean either volume by weight to volume by weight, or density-to-density ratio. There is a construction proposed by Ms. Rubin that was rejected by the district court that does not require the weight component to be added as a limitation with regard to the interpretation of what volume-to-volume means. That is... What does volume-to-volume mean if you don't have a frame of reference? Well, Your Honor... If you don't have by weight or density or by some other measure? Because you don't, if you look strictly at volume and you add water to it, the volume is going to expand, this particular product, the compressed, you don't need to account for the weight involving the water. For example, that's why I wonder where the two are connected. Say I disagreed with you and I said the district court was correct in saying it's by compression, not by expansion. If it's by compression, then don't you need volume-to-volume by some measure, weight or density? It's... I don't necessarily think that you need it. It's not necessitated. It's certainly not indicated in the specification. It's not necessary? I don't think so, Your Honor. But in any event, it's not presented in the specification or in the file history. There's no intrinsic evidence that would support that reading. I mean, it's not volume by weight. It says volume-to-volume. When you compress this matter, the quarry, what are you squeezing out of it? You're not squeezing at a... The compression occurs at a certain dehydration level. So you're not compressing anything other than you're making the material... You're compressing. You're making it smaller from a volume perspective. So it's not air? It's not air between the particles. Pardon? I mean, if you're... It sounds to me like the answer to Judge Wallace's question, if you say you're not squeezing moisture out, you're squeezing the air out. That's correct. Yeah. So it can be re-expanded with air, at least in theory, if you fluff it up. Well, not necessarily. It can't be... The compressed material cannot be re-expanded with air. It has to... The water needs to take... Really? Yeah. Supposing I take a hammer and pound it a little bit and then fluff it with a fork. Right. So the pieces that you would cut off, that chunk, would still have that same compression, or that same compressed... Okay, I put it in a blender. Okay. If you liquefy it... No. Yeah. I mean... If I aerate it. You can add air to the process by taking a sheet of this material and cracking it up and making it. But the critical component, this is not an issue. This was an issue raised by Scott in the lower court, but it's not before this court in terms of what that meaning is. Our view is that the pieces of material that you've broken off from this compressed sheet maintain its compressed format. So in summary, Your Honor, let me just... The comparison here is that Scott and the district court have interpreted volume to volume to mean the transformative event to be compression, which takes the uncompressed bulking agent and compares it to the compressed material. In order to do that, you need the weight measurement. In other words, what the court has said is that it's a density to density ratio. That's not supported by the specification or the claim interpretation or by the prosecution history. Ruben, in comparison, is looking at the compressed material and comparing it to when it's expanded in order to determine. In order to do that, you don't need a weight measurement. You're comparing two volumes. You're giving meaning to the language that's used, and it serves the plain meaning of the claim term. Thank you. Good morning, Your Honors, and may it please the Court. This case properly ended on summary judgment because the district court did construe the fact that there was no evidence in the record to support the patentee's infringement allegations based on those claim constructions. For both her claim constructions and her infringement allegations, Ms. Ruben goes outside the relevant record. For her claim construction arguments, she relies only on extrinsic evidence, not the intrinsic record, and for her infringement allegations, she has no relevant evidence at all. She has no measurements of our product, no data, no testing, no technical experts. In fact, the only evidence in the record about our product is evidence that we submitted, and it shows that we compress to a far greater degree than the range that's claimed by the patent. Our product is compressed to at least 13 1⁄2 times, whereas the patent claims a range of 7 to about 10. Come back to your first point on the claim construction. Where do we find in the patent the notion that this formula, if you will, should be tested on a volume by weight? Your Honor, there is... Do you find that in words in the patent? It's part of the entire term, so it's important to... Part of what? The entire term volume to volume ratio. It's important to keep in mind that we're not looking at the word volume all by itself, but it is a ratio, and as a... Is it absolutely necessary in order to have that ratio to have it be volume by weight? Your Honor, I can give you two or three responses to that. First, there is a need for some sort of baseline comparison. We need to have an apples-to-apples comparison. I knew somebody was going to say that. This was ripe for that analogy. Pun intended. The volume per weight is a very reasonable and sensible way to do that. All of the secondary authority in this case uses that kind of measurement. Both the articles that we submitted and the article that Ms. Rubin submitted, and she also submitted our patent, uses that sort of volume per weight or weight per volume. It's just the inverse is the same when you do the math to compare the ratio to make sure that we're measuring the same volume of coir at the front end and at the back end so we know the degree of compression. Ms. Rubin herself recognizes you need some sort of parameters for this measurement because her proposal is putting this in a container using a tongue depressor and mixing with water, but there is no evidence in this patent whatsoever explaining how to do expansion with those tools. Ms. Rubin gets those parameters from an entirely different patent, not the patents asserted in this case. Your client's patent. Exactly, Your Honor. The Scott 890 patent. Is that some evidence of how one's skill in the art would understand these terms? It is not, Your Honor. No. Why not? Because our patent expressly claims and discusses expansion ratios, and then we go on to explain how you do that expansion comparison. Ms. Rubin's patent claims compressed at a volume-to-volume ratio, and as Judge Wallach was pointing out, both the claim language and the specification directly link volume-to-volume ratio with compression. So the claim language is compressed at a volume-to-volume ratio, and when you look at the specification, in each instance that volume-to-volume ratio is used, it's always directly linked to compression, and that's what the district court recognized. You'll find that in the abstract. That's at JA-73. In the summary of the patent on JA-85, compressed at a volume-to-volume ratio is again at the Each instance is always directly linking those two concepts. The patent does talk about expansion and water in places. It's far removed from those discussions, often in different columns or different pages, and it's only very general. The patent never identifies any particular amount, ratio, or rate of expansion. It's really just talking about the end user, after they buy this product at their hardware store, puts it on their lawn, waters it, and it will expand. Our patent expressly claimed expansion ratio, and Ms. Rubin's patent did not. She's claiming compressed at a volume-to-volume ratio. The district court correctly construed that term, and with that term correctly construed, we then moved for summary judgment because we looked at our product, we did the comparison, and we measured a degree of compression of 13.5 times, which is far outside the range that's claimed by the patent. At that point, and I'll turn now to the other claim construction issue, just to mention this briefly before the court. It seems to me that somewhere in the record there was affidavit evidence about the lengths to which Scott goes to obtain that minimum 13.5. Yes, Your Honor. We submitted an affidavit from Marcus Burton, one of our engineers. You'll find that at JA 754, and he explains that we are able to achieve a compression rate that's beyond the rate claimed by the patent because we use a particular process. We do two things. We use a high degree of what are called fine, small particles of previously compressed coir, so we're starting with a large amount of coir that's already been compressed to a great degree, and we use a special roll compactor process. And so we are able to achieve a product that compresses beyond the range claimed by the patent, but still effectively expands for use by customers, and that's all in Mr. Burton's affidavit. Ms. Rubin, by contrast, in her patent, and this is at the top of Column 9 on JA 89, specifically states that she had a concern with over-compression. Burnishment issues? Your Honor, yes, I'll address that as well, but actually burnishment is not mentioned in the patent at all. Burnishment came up in Ms. Rubin's affidavit that she submitted in opposition to our summary judgment motion. But with respect to the patent itself, there is express language saying that she was concerned with overly compressed wafers that wouldn't work or causing too much harm on the pressing device. And so on the face of the patent, she was concerned about that upper limit of about 10 to 1. Now, in her opposition to summary judgment, she did make an argument that really that upper limit of her range should be construed to mean burnishment. But burnishment is never used in the patent, either in the claims or the written description. And as important, because she was making this argument on summary judgment, Ms. Rubin has no evidence of whether our product burnishes or not. And so that certainly not only would have been advantageous, it would have been required for her to meet our summary judgment motion with evidence that she could show that our product at least raises a material fact about whether we burnish or not. There is no evidence in the record. She provided none to the district court about whether we burnish or not. You're saying it's apple to apple polishing. You're going to do puns in this court and you're going to get them back. Yes, Your Honor. I appreciate that. The only other evidence that Ms. Rubin submitted on summary judgment, again, was nothing about our accused product, but an article and our own patent. Again, that's not the infringement inquiry. It's necessary to evaluate the product accused in this case. We submitted with Mr. Burton's affidavit evidence showing the volume per weight of our coir before it's ever been compressed and the volume per weight of our coir after we run it through our compression process. The result is a compression degree of at least 13 and a half. Ms. Rubin put in no measurements, no data, no testing. Instead, simply an article and our own patent, which is not about the accused product, so it's not relevant evidence, not sufficient. So whether, as the district court recognized, whether summary judgment is granted based on our affirmative evidence of non-infringement or the lack of evidence from the patentee on either ground under Felitech's and long-standing summary judgment standards, summary judgment was proper in favor of Scott. What about your promo statement that had the court adopted their claim construction, that it would have brought the ratio down from your 13% back down into the range from 7 to 10? Your Honor, let me answer it this way. That evidence, it would have been advantageous to submit it in opposition to summary judgment. I can't say that it would have been required because the claims had been construed a certain way, but given the way the patent is written, both the claims and the specification, there is no error in the claim construction, and that discovery had closed. Ms. Rubin had every opportunity to test our products. She did not. Is there any evidence to that effect in the record at all? With respect to expansion? Yes, if the expansion would go, depending on what type of measurement you use bottom to bottom, if the expansion, the Scott expansion, instead of expanding to 13, it would expand only to about 7. There was some discovery on that, Your Honor. But again, there's no support in the intrinsic record to read the claims as regarding expansion. So while it's in the record, it is irrelevant because it wouldn't match what the claims are intended to convey. The claims expressly link volume to volume ratio with compression, not expansion. There's no basis to import all of these parameters that Ms. Rubin would introduce for an expansion ratio. If the Court has no further questions, we would ask the Court to affirm the judgment of the District Court. Thank you very much. Your Honor, if I may, very briefly, I just want to draw the Court's attention to a passage in the patent of the 856. It's column 9, lines 18 and 19 and 20. And I'll read it to you. I have the addendum to the opening brief. It's addendum 18 for the site. But it uses, it says, if necessary, the bulking agent is also decompressed to a volume to volume ratio of about 3 to 1 or less. And so clearly, there's a use of the volume to volume ratio in the context of decompress that's used here. And as we've indicated a little bit earlier, the decompression would be kind of the flip side of expansion. But just above it, it talks about dehydration. So there's a difference between compression and decompression and hydration and dehydration, yes? No, Your Honor. It talks about the preferred humidity level because when you're... The humidity level needs to be at a certain level for this process to work. But in order to... I don't think you're addressing my question. Okay. Your Honor, perhaps I misunderstood your question. My question was, there's terminology in here about dehumidifying and humidifying. And compression and decompression. So they mean different things. Do they not? That's correct. Yes. So compression and decompression mean different things. Different things from humidifying and dehumidifying. Yes. Okay. Right? Thank you. And then I think decompression in this context means expansion. Thank you, Your Honor. Okay. Thank you very much.